## Case No. 18,256.
### CHARGE TO GRAND JURY.
[2 Spr. 279.]

Circuit Court, D. Massachusetts. May 15, 1861.

CONSTITUTIONAL LAW—POWER OF CONGRESS TO PROTECT COMMERCE — PENAL ENACTMENTS — INSURRECTION—BELLIGERENT RIGHTS—FUNCTIONS OF JUDICIARY.

[1. The clause in the constitution which gives to congress the power to define and punish piracy is not the only provision conferring authority to protect the commerce of the United States by penal enactments. The power given to regulate commerce, and to make all laws necessary and proper for carrying that power into effect, invests congress with authority to give full protection to commerce by its criminal jurisprudence.]

[2. Statutes passed by congress in pursuance of this power are of paramount authority, and cannot be invalidated or impaired by the action of any state or states. Any law, ordinance, or constitution made by them for that purpose is wholly nugatory, and can afford no legal protection to those who may act under it.]

[3. In case of an attempted revolution to overthrow the authority of the United States, where a number of states combine for that purpose, it is the province of the political department of the government to determine whether belligerent rights shall be accorded to them. Until belligerent rights are so accorded, the judiciary cannot recognize any right in the insurgents to carry on legitimate war, but must regard them as rebels and lawless aggressors upon the citizens of the United States, and apply to them the penal laws which make their acts punishable as crimes.]

SPRAGUE, District Judge (charging grand jury). At the last term of the district court, I gave some instructions to the grand jury upon the subject of treason, and other offences tending to subvert the government or prevent the execution of its laws. [Case No. 18,273.] That charge having been published will be in the hands of the district attorney, and a printed copy may be laid before you.

I do not deem it necessary, therefore, now to repeat it. I would invite your attention to that part of the Criminal Code which is intended for the protection of the commerce of the United States, and the suppression of general piracy, but more particularly the former:

By St. 1790, c. 9, § 8 (1 Stat. 113), it is enacted "that if any person or persons shall commit upon the high seas, or in any river, haven, basin, or bay, out of the jurisdiction of any particular state, murder or robbery, or any other offence which if committed within the body of a county, would by the laws of the United States be punishable with death; or if any captain or mariner of any ship or other vessel, shall piratically and feloniously run away with such ship or vessel, or any goods or merchandise to the value of fifty dollars, or yield up such ship or vessel voluntarily to any pirate; * * * every such offender shall be deemed, taken and adjudged to be a pirate and felon and, being thereof convicted, shall suffer death."

By section 9, it is enacted "that if any citizen shall commit any piracy or robbery aforesaid, or any act of hostility against the United States, or any citizen thereof, upon the high sea, under color of any commission from any foreign prince or state, or on pretence of authority from any person, such offender shall, notwithstanding the pretence of any such authority, be deemed, adjudged and taken to be a pirate, felon, and robber, and on being thereof convicted shall suffer death."

The tenth section extends the punishment of death to accessaries before the fact. They are those who aid, assist, procure, command, counsel, or advise any person to commit any such robbery, murder, or other piracy.

The eleventh section punishes accessaries after the fact. They are those who, "after any murder, felony, robbery, or other piracy whatsoever aforesaid," shall have been committed, shall furnish aid to those by whom the crime has been perpetrated.

By section 12, "if any seaman or other person shall * * * confederate, or attempt or endeavor to corrupt any commander, master, officer, or mariner, to yield up or to run away with any ship or vessel, or with any goods, wares, or merchandise, or to turn pirate, or to go over to or confederate with pirates, or in any wise trade with any pirate knowing him to be such, or shall furnish such pirate with any ammunition, stores or provisions of any kind, or shall fit out any vessel knowingly and with a design to trade with or supply or correspond with any pirate or robber upon the seas; or if any person or persons shall any ways consult, combine, confederate or correspond with any pirate or robber on the seas, knowing him to be guilty of any such piracy or robbery; * * * such person or persons so offending, and being thereof convicted," shall be subject to fine and imprisonment.

By St. 1820, c. 113, § 3 (3 Stat. 600), "if any person shall, upon the high seas, or in any open roadstead, or in any haven, basin, or bay, or in any river where the sea ebbs and flows, commit the crime of robbery, in or upon any ship or vessel, or upon any of the ship's company of any ship or vessel, or the lading thereof, such person shall be adjudged to be a pirate:" and, on conviction, shall suffer death.

"And if any person engaged in any piratical cruise or enterprise, or being of the crew or ship's company of any piratical ship or vessel, shall land from such ship or vessel, and, on shore, shall commit robbery, such person shall be adjudged a pirate:" and, on conviction, shall suffer death.

By St. 1825, c. 65, § 6 (4 Stat. 116), "if any person or persons upon the high seas, or in any arm of the sea, or in any river, haven, creek, basin, or bay, within the admiralty and maritime jurisdiction of the United States, and out of the jurisdiction of any particular state, shall, by surprise, or by open force or violence, maliciously attack, or set upon, any ship or vessel belonging in whole or part, to the United States, or to any citizen or citizens thereof, or to any other person whatsoever, with an intent unlawfully to plunder the same ship or vessel, or to despoil any owner or owners thereof of any moneys, goods, or merchandise, laden on board thereof, every person so offending, his or her counsellors, aiders, or abettors, shall be deemed guilty of felony," and subject to fine and imprisonment.

By section 7, "if any person or persons upon the high seas, or in any other of the places aforesaid, with intent to kill, rob, steal, * * * or to do or perpetrate any other felony, shall break or enter any ship or vessel," he shall be liable to fine and imprisonment.

By St. 1846, c. 98, § 5 (9 Stat. 73), "if any captain or other officer or mariner, of a ship or vessel, on the high seas, or any other waters within the admiralty and maritime jurisdiction of the United States, shall piratically or feloniously run away with such ship or vessel, * * * or yield up such ship or vessel voluntarily to any pirate," he shall be subject to fine and imprisonment.

By St. 1847, c. 51, § 1 (9 Stat. 175), "any subject or citizen of any foreign state, who shall be found and taken on the sea, making war upon the United States, or cruising against the vessels and property thereof, or of the citizens of the same, contrary to the provisions of any treaty existing between the United States and the state of which such person is a citizen or subject, when by such treaty such acts of such persons are declared to be piracy," may be tried, convicted, and punished in the same manner as other persons charged with piracy.

So far as the foregoing enactments are intended to punish aggressions upon the vessels

of foreign nations by pirates who are regarded as the enemies of mankind, hostes humani generis, they are founded upon the first article of the constitution, which gives to congress the power to define and punish piracy. But that is by no means the only clause in the constitution that gives authority to protect the commerce of the United States by penal enactments. Congress is, in express terms, vested with the power to regulate commerce, and to make all laws necessary and proper to carry that power into effect; and there can be no doubt that the legislature is thus authorized to give full protection to the commerce of the United States by its criminal jurisprudence. This power has been exercised ever since the organization of our government, and has been affirmed by the supreme court. U. S. v. Coombs, 12 Pet. [37 U. S.] 72. It is, then, the province of those who have the power of legislation to determine what penalties shall be inflicted upon such as commit aggressions or depredations upon our commerce; and it is the province of the judiciary to ascertain and follow the legislative will.

These statutes being enacted pursuant to the constitution are of paramount authority, and cannot be invalidated or impaired by the action of any state or states; and every law, ordinance, and constitution made by them for that purpose, whatever its name or form, is wholly nugatory, and can afford no legal protection to those who may act under it. But suppose that a number of states undertake by revolution to throw off the government of the United States and erect themselves into an independent nation, and assume in that character to issue commissions authorizing the capture of vessels of the United States, will such commissions afford any protection to those acting under them against any penal laws of the United States? Cases have heretofore arisen where a portion of a foreign empire—a colony—has undertaken to throw off the dominion of the mother country, and assumed the attitude and claimed the rights of an independent nation; and in such cases it has been held that the relation which the United States should hold to those who thus attempt and claim to institute a new government is a political rather than a legal question; that, if those departments of our government which have a right to give the law, and which regulate our foreign intercourse and determine the relation in which we shall stand to other nations, recognize such new and self-constituted government as having the rights of a belligerent in a war between them and their former rulers, and the United States hold a neutral position in such war, then the judiciary, following the other departments, will to the same extent recognize the new nation.

But if the legislative and executive departments of the government utterly refuse to recognize such new government, or to acknowledge it as having any belligerent or national rights, and, instead of taking a neutral attitude, endeavor by force to suppress depredations on commerce by such assumed government, as violating the rights and infringing the laws of the United States, then the judiciary will hold that such depredations are not to be considered as belligerent, and entitled to the immunities of lawful war, but as robbery or other lawless depredations, subject to the penalties denounced by our laws against such offences. U. S. v. Palmer, 3 Wheat. [16 U. S.] 618, 634, 635; U. S. v. Klintock, 5 Wheat. [18 U. S.] 144, 149; U. S. v. Smith, Id. 153, 155, 161, 162; U. S. v. Pirates. Id. 193, 194, 197. See, also, The Palmyra, 12 Wheat. [25 U. S.] 16; The Marianna Flora, 11 Wheat. [24 U. S.] 40; U. S. v. The Malek Adhel, 2 How. [43 U. S.] 232. The judiciary certainly cannot adopt a more indulgent rule toward those who are in open rebellion against the authority of the United States, or toward aliens co-operating with and acting under the assumed authority of such rebels. While the other departments of the government and the nation refuse to regard any state, or association of states, as having the rights of a belligerent, or as carrying on legitimate war, and are exerting not only moral but physical force against them as rebels, and lawless aggressors upon the United States and its citizens, the courts also must so regard them, and cannot admit that any legislation or assumption of power by such state or states can authorize acts in violation of the laws of the United States, or change the character of offences under them.

There is another view. Mere rebellion absolves no man from his allegiance. Citizens of the United States, therefore, may not only be subject to the penalties of treason; but if they commit hostilities upon the commerce of the United States, under a commission from any foreign nation, even the oldest and best established,—such as England or France, for example,—they may be dealt with as pirates by the express enactments in the ninth section of the statute of 1790, which has already been referred to. And aliens who are subjects or citizens of any foreign state, with whom we have a treaty,—such as is described in the statute of 1847 (chapter 51), which has already been quoted,—if, in violation of such treaty, they make war upon the United States, or cruise against our vessels or property under a commission from any foreign government, however long acknowledged, may, by the clear provisions of that statute, be dealt with as pirates.

If aliens, subjects of a nation with whom we have no such treaty, commit acts of hostility upon our commerce, under the alleged authority or commission of a new and self-created government claiming to be independent, it may be material to inquire whether such government is to be regarded as having the immunities of a belligerent, or whether such aliens may be treated as robbers on the seas; and this inquiry will be governed by the principles which I have already stated.

Besides the laws to which I have called your attention, there are others designed for the protection of persons and property upon the ocean, by prescribing the duties and liabilities of the officers and marines on board American vessels; but these do not seem to require any particular attention at the present time.